UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE RIDER,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 17-12702 |
| | | Honorable Matthew F. Leitman |
| v. | | Magistrate Judge David R. Grand |

WELLS FARGO BANK, NA,

Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO DISMISS [6]

Plaintiff Theodore Rider ("Rider") brings this civil action against Defendant Wells Fargo Bank ("Wells Fargo"). Rider originally filed his complaint on July 19, 2017, in Macomb County Circuit Court. (Doc. #1-2). On August 17, 2017 the case was removed to this Court on diversity of citizenship grounds pursuant to 28 U.S.C. § 1441. (Doc. #1). On August 30, 2017, an Order of Reference was issued by the Honorable Matthew F. Leitman for management, hearing, and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #4).

Presently before the Court is Wells Fargo's motion to dismiss filed on September 22, 2017. (Doc. #6). Rider filed a response (Doc. #10), and Wells Fargo filed a reply. (Doc. #11). On March 5, 2018, the Court held oral argument, and agreed to hold its recommendation in abeyance while the parties pursued an amicable resolution of the dispute. With the Court's permission, the parties then filed supplemental briefs. (Docs. #13, #14, #15, #16). The parties' settlement efforts having proven unsuccessful, the matter is now ripe for a decision. For the reasons discussed below, **IT IS RECOMMENDED** that Wells Fargo's motion to dismiss (**Doc.**

**#6**) be **GRANTED IN PART** and **DENIED IN PART**.

I.      Background

This Court handles many "mortgage foreclosure" cases each year, but none quite like this one where: (1) the plaintiff was never a party to the mortgage (or underlying note) in question; and (2) his claims, to the extent he has any, stem from him mistakenly listing the mortgage holder as a secured creditor in his Chapter 13 bankruptcy petition, and the Chapter 13 Bankruptcy Trustee paying that "creditor" almost $75,000.  Ultimately, while this case's unusual facts do not give Rider any rights under the relevant contractual documents (*i.e.*, the mortgage and note), they may well have resulted in Wells Fargo being unjustly enriched at Rider's (or, perhaps more accurately, his bankruptcy estate's) expense.  Thus, Wells Fargo's motion to dismiss should be granted as to Rider's claims based on the note and mortgage, but denied as to his unjust enrichment claim.

This case involves real property located at 37303 Camellia Lane in Clinton Township, Michigan ("Property").   In February 2012, Michelle Woolhiser (a non-party to this case) received a loan from Wells Fargo in the amount of $289,957.00, which was evinced by a note ("Note") (Doc. #6-2) and secured by a mortgage ("Mortgage").  (Doc. #6-3).  These documents show Ms. Woolhiser to be the sole borrower on the Mortgage.  *Id.*  A few months later, on April 11, 2012, Woolhiser executed a quitclaim deed in which she purported to quitclaim her rights in the Property to herself and Rider.  (Doc. #1-2 at 19).  The quitclaim deed was recorded on April 13, 2012 at the Macomb County Register of Deeds.  (*Id.*).  Rider appears to assert that as a result of Woolhiser executing the quitclaim deed he became a co-owner of the Property with her.  (Doc. #10 at 9)[1].  The nature of Rider and Woolhiser's personal relationship is unclear, but Rider

---

[1] In his complaint (and brief in response to Wells Fargo's motion), Rider alleges an interest in the

avers that (1) in the spring of 2013, Woolhiser moved out of the Property; and (2) Rider and his children have been living there since that time. (Doc. #1-2 at ¶¶ 7-8).

In 2013 Woolhiser apparently defaulted on the Note and moved out of the Property. (*Id.* at ¶ 8). This led to state court litigation between Woolhiser and Rider over ownership of the Property. (*Id.* at ¶ 9). Woolhiser then filed for Chapter 13 bankruptcy, which stayed the state court litigation. (*Id.*). Rider alleges that he "attempted to make the monthly mortgage payments to Wells Fargo . . . [but Wells Fargo] refused to communicate with [him]." (*Id.* at ¶ 10). Rider alleges that "as a result of [Wells Fargo's] failure to communicate with [him], [he] was forced to file a Chapter 13 Bankruptcy and include [Wells Fargo] in the Bankruptcy." (*Id.* at ¶ 11).

Rider filed a Chapter 13 bankruptcy petition on June 30, 2014. (Doc. #10-2 at 31-35). For reasons that are unclear, in this and subsequent bankruptcy filings, although Rider was not a party to the Note (or Mortgage), he included Wells Fargo on his Schedule D list of "Creditors Holding Secured Claims," along with a $289,957 "claim" related to the Mortgage. (*Id.* at 35; Ex. A, copy of Rider's July 14, 2014 Chapter 13 Schedule D).[2] "The [Bankruptcy] Court confirmed [Rider's] 60 month plan on December 12, 2014. Among other things, the plan provided for continuing monthly payments via the Chapter 13 Trustee to Wells Fargo [] on [the Mortgage]." (Doc. #13-1, 8/16/16 Bankruptcy Court Order, at 2). In his complaint, Rider alleges that "during [his] Chapter 13 Bankruptcy, [Wells Fargo] received and accepted $74,972.08 from the estate . . ." (Doc. #1-2 at ¶ 12). Despite its initial assertions to the contrary, Wells Fargo now admits that

---

Property as a result of the April 11, 2012 quitclaim deed, but elsewhere in his complaint he alleges that he "became owner of the [Property] in 2005 . . ." (Docs. #1-2 at ¶¶ 5, 7).

[2] Other information on Rider's bankruptcy filing belied the inclusion of Wells Fargo as a secured creditor on Schedule D. For instance, on that same schedule, Rider indicated that he was "JOINT ON DEED, NOT ON MORTGAGE." (Ex. A). And, in Rider's Schedule J listing of expenses, he did not include any amount on the line for "rental or home ownership expenses for your residence." (*Id.*).

it not only "received and accepted" these funds, but that it also retained them.  (Docs. #10-2 at 39-40; #13 at 2).[3]

On December 1, 2016, Rider voluntarily moved to dismiss his bankruptcy petition, which was granted on December 2, 2016.  (Doc. #6-12).  That same day, Wells Fargo initiated foreclosure proceedings against the Property, which ultimately resulted in Wells Fargo purchasing the Property at a Sheriff's Sale for $298,098.16.  (Doc. #6-4).  The ensuing six-month statutory redemption period, which offered Woolhiser (as the mortgagor) an opportunity to redeem the Property, expired without her doing so.  *Id.*  Rider alleges that he "attempted to communicate with [Wells Fargo] to continue making Mortgage payments," but that Wells Fargo "refused to allow [him] to redeem the [Property] before the expiration of the redemption period on June 2, 2017," presumably because he "had no valid relationship with Wells Fargo whatsoever" given his non-party status to both the Note and Mortgage in question.  ((Docs. #1-2 at ¶¶ 15-16; #6 at 7).

Rider then filed his six-count complaint against Wells Fargo, asserting the following claims: Count I – quiet title; Count II – wrongful foreclosure; Count III – unjust enrichment; Count IV – fraud; Count V – conversion to judicial foreclosure; and Count VI – injunctive relief.  (Doc. #1-2).  Wells Fargo has moved to dismiss each of these claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Doc. #6).  Below the Court will address the parties' arguments as to

---

[3] Wells Fargo initially advised this Court that it had "returned funds received from the Chapter 13 Trustee."  (Doc. #6 at 14).  Indeed, this is what Wells Fargo told the bankruptcy court in its so-called "Objection to Final Confirmation".  (Doc. #6-11, entitled "Response to Trustee's Notice of Final Cure Payment and Trustee's Notice of Completion of Plan Payments.").  After this Court questioned Wells Fargo about its vague assertion at the hearing on its instant motion to dismiss, its counsel investigated the matter further.  In doing so, he "learned that the Objection to Final Confirmation was incorrect, and the funds received from Plaintiff were not returned to the Chapter 13 Trustee."  (Doc. #13 at 2).

Counts II, III, and IV.[4]

## II.    Applicable Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  Fed. R. Civ. P. 12(b)(6) (internal citation omitted).  Only enough facts are required "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The plausibility standard is not simply "a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 129 U.S. at 678 (internal quotations and citations omitted).  When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions.  *Napolitano*, 648 F.3d at 369.

Though the court deciding a Rule 12(b)(6) motion is generally confined to the pleadings, Fed. R. Civ. P. 12(d), certain other matters may be properly considered without converting the motion into one for summary judgment.  Documents either attached to the pleadings or "referred

---

[4] Rider's claims for quieting title (Count I), conversion to judicial foreclosure (Count V), and injunctive relief (Count VI) should be dismissed because they are all remedies, not separate causes of action.  *See Goryoka v. Quicken Loans, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013); *Underwood v. Wells Fargo Home Mortg., Inc.*, No. 16-10226, 2016 WL 3182022, at *5 (E.D. Mich. June 8, 2016); *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012).

to in the pleadings and . . . integral to the claims" may be considered in ruling on a 12(b)(6)

motion. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)

(citing Fed. R. Civ. P. 10(c)).   Further, "[a] court may consider matters of public record in

deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.*

at 336 (citing *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004)).

Rule 12(b)(1) governs challenges for lack of subject-matter jurisdiction, including

challenges to a plaintiff's standing.   *See Loren v. Blue Cross & Blue Shield of Michigan*, 505

F.3d 598, 607 (6th Cir. 2007).   The Sixth Circuit recognizes "a crucial distinction, often

overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions

that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).   Facial challenges

are handled much like Rule 12(b)(6) motions, treating the complaint's allegations as true.   *Id.*

Factual challenges under Rule 12(b)(1), however, are different.   "Because at issue in a factual

12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is

substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Id.*   (quoting Mortensen, 549 F.2d at 890-91).   The

plaintiff bears the burden of establishing subject-matter jurisdiction in these cases.   *EEOC v.*

*Hosanna-Tabor Evangelical Lutheran Church and Sch.*, 597 F.3d 769, 776 (6th Cir. 2010)

(citing *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007)).

## III.   <u>Analysis</u>

Wells Fargo first argues that because Rider is not a party to the Note or Mortgage, he

lacks standing to challenge the foreclosure proceedings which resulted in a Sheriff's Sale of the

Property.  (Doc. #6 at 7-8).  Wells Fargo separately argues that Rider lacks standing to bring a claim to set aside the Sheriff's Sale because "he has not alleged fraud or irregularity in the foreclosure sufficient to set aside the already completed Sheriff's Sale."  (Doc. #6 at 20). Second, Wells Fargo argues that Rider's unjust enrichment claim fails because, while it kept $74,972.09 worth of Rider's payments, he cannot show that this resulted in an "inequity."  (Doc. #13 at 2).  Last, Wells Fargo asserts that Rider's fraud claim fails because he does not allege it with sufficient particularity.  (Doc. #6 at 17).  These arguments are addressed below.

### a.  Wrongful Foreclosure and Challenge to the Sheriff's Sale

#### i.  Wrongful Foreclosure

Wells Fargo moves to dismiss Rider's claims challenging the foreclosure on the ground that because Rider was not a party to the Note or Mortgage, he lacks standing to make such a challenge.  *Id.*  The Court agrees.

Article III standing is an indispensable element of every lawsuit, and is one which a plaintiff bears the burden of proving.  *Lujan v. Def's. of Wildlife*, 504 U.S. 555 (1992); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  To satisfy Article III's standing requirement, a plaintiff must show the following: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-524 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000)).  Thus, in order to have standing to challenge Wells Fargo's foreclosure on the Mortgage, Rider must first be able to show that he suffered an "injury in fact" as a result of that action by Wells Fargo .  To establish

an "injury in fact" Rider is required to show, in addition to other factors, that he suffered "an invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Here, it is undisputed that Rider was not a party to the Note or the Mortgage, and he does not allege any facts from which one could conclude he was an intended third-party beneficiary of either document. (Docs. #6-2, #6-3). Thus, he must show that he possesses a "legally protected interest" under the Note or Mortgage despite not being a party to those documents. If Rider is unable to do so, he is unable to show any "injury in fact" which could afford him standing in this case. *Spokeo, Inc.*, 136 S.Ct. at 1548.

Case law establishes that as a non-party to the Note and Mortgage, Rider possesses no legally protected interest under them, precluding a finding of an "injury in fact" flowing from the foreclosure. *Austin v. Countrywide Home Loans, Inc.,* No. 07-CV-15127, 2008 WL 3833269, at *4 (E.D. Mich. Aug. 13, 2008) ("[Plaintiff] is not a borrower under the Note, did not sign the Note and has no interest in the Note. Therefore, plaintiff has no standing to sue under the Note. . . . Plaintiff's rights in the Property, whatever they may be, are not the same thing as having a personal stake in the Note. Therefore, plaintiff has no standing to ask this Court to exercise its jurisdiction over the Note . . ."); *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (dismissing complaint where plaintiff "was not a party to the [underlying] loan and, therefore, lacked standing to bring any claim based on that loan"). *See also Setzer v. Richards,* No. A-11-CA-214 LY, 2012 WL 32943, at *3 (W.D. Tex. Jan. 5, 2012); *Gibson v. PNC Bank Nat. Ass'n*, No. 1:13-CV-01819-CL, 2014 WL 1333985, at *3 (D. Or. Apr. 2, 2014), *aff'd sub nom. Gibson v. PNC Bank Nat'l Ass'n*, 673 F. App'x 634 (9th Cir. 2016).

Rider's other arguments are unavailing. For instance, while he claims an interest in the Property stemming from the April 2012 quitclaim deed between himself and Woolhiser, he cites

no law holding that any rights transferred to him as a result of the quitclaim deed gave him any rights with respect to the Note or Mortgage.  Rider also argues that "[r]edressability, the only prong contested here, requires 'a likelihood that the requested relief will redress the alleged injury.'"  (Doc. #10 at 13).  But this argument's premise is simply incorrect; Wells Fargo made clear in its motion to dismiss that it *did* dispute that an "injury in fact" had occurred.  (Doc. #11 at 7-8) ("Plaintiff could not have suffered an 'injury in fact'. . . .").

In short, Rider was never vested with a "legally protected interest" in the Note or Mortgage, and he therefore cannot show that the foreclosure in question, which was based on a default under those documents, caused him to suffer an "injury in fact."  Thus, to the extent Rider's claims are based on a violation of his purported rights in the Note or Mortgage – such as his wrongful foreclosure claim – he lacks Article III standing.  *Dallas*, 493 U.S. at 231.  Accordingly, Wells Fargo's motion to dismiss Rider's claim for wrongful foreclosure (Count II) should be granted.

### ii.  Setting Aside the Sheriff's Sale

Wells Fargo separately argues for dismissal of Rider's wrongful foreclosure claim to the extent it seeks to set aside the Sheriff's Sale.  (Doc. #6 at 7).  Wells Fargo argues that because the Property was sold and not redeemed within the statutory period, and because Rider did not sufficiently allege fraud in the foreclosure process, he lacks the standing necessary to bring this claim.  But the analysis never even gets this far because, for the reasons discussed above, Rider had no right to challenge the foreclosure sale in the first place.

Per statute, after a sheriff's sale, a mortgagor (in this case, Woolhiser) is entitled to a period of time in which to redeem the property.  M.C.L. § 600.3240.  Upon expiration of this period, the purchaser of the deed (in this case, Wells Fargo) becomes vested with "all of [the]

right[s], title, and interest" under the property.  *Piotrowski v. State Land Office Bd*., 302 Mich. 179, 187 (1942); M.C.L. § 600.3236.  At this time, a mortgagor loses her standing to bring a claim to set aside the sheriff's sale, because she relinquishes any of the rights under the Note and Mortgage which she previously possessed.  *Bryan v. JP Morgan Chase Bank*, 304 Mich. App. 708 (2014).  If a former mortgagor seeks to set aside a foreclosure sale after the statutory period has expired, she must demonstrate, among other elements, "fraud and irregularity in the foreclosure procedure itself."  *Conlin v. Mortgage Elec. Registration Sys., Inc*., 714 F.3d 355 (6th Cir. 2013); *see also Kim v. JPMorgan Chase Bank, N.A*., 493 Mich. 98, 115-16 (2012).  Put differently, a borrower would have to establish that the rights which they rightfully possessed under the Note and Mortgage were infringed upon as a result of the purchaser's wrongdoing.

Here, Rider is not a borrower given his non-party status to both the Note and Mortgage. He plainly did not possess any rights under the Note or Mortgage at any time.  The only person who had rights under the Note and Mortgage – and who would have been able to redeem the property or attempt to set the foreclosure sale aside – was Woolhiser.  When she did not timely redeem the property, "all of the rights, title and interest" attached to the Property were extinguished and lawfully transferred to Wells Fargo as a result of the Sheriff's Sale.  *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (citing *Piotrowski*, 302 Mich. at 187).  As a non-party to the Note and Mortgage – one never endowed with any rights under them – Rider lacks standing to even allege fraud or irregularity in the foreclosure and Sherriff's Sale.  Accordingly, to the extent Rider is asserting a claim to set aside the Sheriff's Sale, that claim should be dismissed.

### b.  Unjust Enrichment

Despite the fact that Wells Fargo accepted and retained $74,972 in payments from the

Chapter 13 Trustee when it never should have been deemed a creditor in the bankruptcy action in the first place, it argues that Rider fails to state a claim for unjust enrichment because:

> at the very least, the payments [Rider] made during his bankruptcy constituted rent for his use and enjoyment of the Property. Indeed, had [Rider] not made any payments during his bankruptcy, he would have been the unjustly enriched party – he lived in the Property without payment for years, and without having any obligation to repay the debt or face any of the financial repercussions of [Woolhiser's] default on her Mortgage obligations.

(Doc. #13 at 2).

"In order to sustain [a] claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). In this case the first prong is not in dispute, as Wells Fargo now concedes that it received and retained $74,972 from Rider (or his bankruptcy estate). (Doc. #13). Thus, the only question is whether Wells Fargo has shown that because Rider resided at the Property while his bankruptcy case remained open, its retention of these substantial monies cannot, as a matter of law, be "inequitable." At least at the motion to dismiss stage, Wells Fargo's argument fails.

Wells Fargo provided no case law whatsoever in support of this particular argument, and it appears to simply assume that (1) Rider obtained some "use and enjoyment" of the Property *as a result of* the $74,972 in payments, and (2) the payments made are equivalent to the value Rider received. (Doc. #13 at 2). But it is not clear that either of Wells Fargo's assumptions is correct. It has not shown that it refrained from taking action with respect to the Mortgage as a result of the payments in question. And, even if Rider did benefit from the payments, Wells Fargo has not shown that the benefit he received equaled (or even approximated) $74,972. Because Rider was not a party to the Mortgage, it would seem that a fair market rental rate, rather than the required

11

monthly payment due under the Mortgage, would be the best tool to measure the benefit he received, and correspondingly, whether Wells Fargo's retention of the funds resulted in it being unjustly enriched. Yet no information is before the Court that speaks to those matters. In short, at the very least, questions of fact exist about the extent of any benefit Rider received and any "inequity" that may exist.[5] *See, e.g, In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 895 (E.D. Mich. 2014) ("The issue is whether the transaction was unjust. [Indirect Purchaser Plaintiffs] allege that they overpaid for OSS because Defendants fixed the prices of OSS. The facts alleged in their complaints meet their pleading burden, *see In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517, 545 (D.N.J.2004) (the exchange of 'any consideration' does not bar recovery under an unjust enrichment theory), inasmuch as the allegations create an inference that the consideration was not reasonable, valuable, or adequate.[6] Defendants have failed to cite a single case finding that payment or receipt of anything of value from a defendant will defeat a plaintiff's claims for unjust enrichment. 'Determinations that depend on evaluating whether a benefit received approximates the value paid are primarily questions of fact, and as such, are not appropriately addressed on a motion to dismiss.' *Id.* at 546.").

Accordingly, to the extent Wells Fargo moves to dismiss Rider's unjust enrichment claim, its motion should be denied.

---

[5] Other questions exist, as well, such as whether the unjust enrichment claim asserted by Rider is actually owned by the Chapter 13 Trustee. That issue is not properly before the Court at this time, and the Court declines to consider it further.

[6] Here, the specific nature of Rider's unjust enrichment claim could have been spelled out more clearly in his complaint. (Doc. #1-2 at ¶¶ 32-37). At the same time, he alleges (and has shown) that Wells Fargo received and retained the $74,972, and as noted above, Rider was never liable on the Note to begin with. Taking all reasonable inferences in Rider's favor, as the Court must do at this stage of the proceedings, those two facts alone are sufficient to preclude dismissal of Rider's unjust enrichment claim.

### c.  Fraud

Rider's claim in Count IV is entitled, "Fraud, Based upon Silent Fraud and Bad Faith Promises."  In support of these claims, Rider alleges that Wells Fargo accepted $74,972.08 from him, retained it for its own benefit, and then refused to communicate with him, leading to purported "wrongful foreclosure proceedings."  (Doc. 1-2 at ¶ 45-48).

A heightened pleading standard applies to fraud claims, and a plaintiff pleading a fraud claim must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b). To state a claim for fraud, a plaintiff must plead the following:  1) that a defendant made a material representation; 2) that it was false; 3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; 4) that he made it with the intention that it should be acted upon by Plaintiffs; 5) that Plaintiffs acted in reliance upon it; and 6) that he thereby suffered injury.  *Scott v. Bank of Am., N.A.*, 682 F. App'x 417, 419 (6th Cir. 2017), *reh'g denied* (Mar. 30, 2017); *Hi-Way Motor Co. v. Int'l. Harvester Co.*, 398 Mich. 330, 336 (1976).  "Each of these facts must be prove[n] with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them is fatal to a recovery."  *Id.*

Silent fraud "holds that when there is a legal or equitable duty of disclosure, '[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud.'"  *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 569 (Mich. 2012).  A plaintiff pleading silent fraud must "show that [Defendant] had a duty to disclose a material fact and failed to do so."  *Westfield Ins. Co. v. Enterprise 522, LLC*, 34 F. Supp. 3d 737, 747 (E.D. Mich. 2014).  *See also Cassidy v. Cassidy*, 899 N.W.2d 65, 88 (Mich. App. 2017) ("In

13

order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure."). The elements of silent fraud are: (1) the defendant failed to disclose a material fact about the subject matter at issue; (2) the defendant had actual knowledge of the fact; (3) the failure to disclose the fact gave the plaintiff a false impression; (4) when the defendant failed to disclose the fact, he or she knew that the failure to disclose would create a false impression; (5) when the defendant failed to disclose the fact, he or she intended that the plaintiff rely on the resulting false impression; (6) the plaintiff indeed relied on the false impression; and (7) the plaintiff suffered damages resulting from his or her reliance. *City of Dearborn v. Burton-Katzman Dev. Co.*, 2014 WL 7212895, at *10 (Mich. Ct. App. Dec. 18, 2014) (citing *Hord v. Envtl. Research Inst. of Michigan*, 579 N.W.2d 133 (Mich. Ct. App. 1998)). *See also Warren Prescriptions, Inc. v. Walgreen Co.*, No. 17-10520, 2018 WL 287952, at *5–6 (E.D. Mich. Jan. 4, 2018).

Under the foregoing standards, Rider fails to plead a fraud claim. First, as the Court explained above, as a nonparty to the Note and Mortgage, Rider suffered no "injury in fact" as a result of the foreclosure proceedings themselves. Thus, since Rider's fraud claim culminates in an allegation that "[a]s a proximate result of the fraudulent conduct of [Wells Fargo] as herein alleged, [he] was deceived and subjected to wrongful foreclosure proceedings," that claim fails. (Doc. #1-2 at ¶ 48). Second, in his complaint Rider failed to identify any material misrepresentation that Wells Fargo actually made to him. Nor could Wells Fargo have deceived Rider about whether he was or was not a party to the Mortgage or Note as that information was always known to Rider. At most, Rider has alleged that the parties' conduct and transactions resulted in an unjust benefit to Wells Fargo. (*Id.* at ¶ 43). But that allegation forms the basis of an unjust enrichment claim, not a fraud claim. Accordingly, as to the fraud claims contained in

Count IV of Rider's complaint, Wells Fargo's motion to dismiss should be granted.

**IV.**   **Conclusion**

For the reasons stated above, **IT IS RECOMMENDED** that Wells Fargo's motion to dismiss **(Doc. #6)** be **GRANTED IN PART** and **DENIED IN PART;** all of Rider's claims against Wells Fargo other than his unjust enrichment claim should be **DISMISSED**.

Dated: June 6, 2018                                      /s/ David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) and (b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 6, 2018.


/s/ Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated: June 6, 2018

# EXHIBIT A

B6D (Official Form 6D) (12/07)

In re   __Theodore Bruce Rider, II_____,        Case No.   __14-50871_____
                                                                        Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **3001**<br><br>**CHARTER TOWNSHIP OF CLINTON**<br>**PO BOX 553160**<br>**WATER & SEWER**<br>**DETROIT, MI 48255** | | - | 2014<br>**WATER & SEWER**<br>**DEBTORS RESIDENCE**<br>**37303 CAMELLIA LANE**<br>**CLINTON TOWNSHIP, MI 48036**<br>**(JOINT WITH EX-FIANCE, MICHELLE**<br>**WOOLHISER)**<br>**(JOINT ON DEED, NOT ON MORTGAGE)** | | | | | |
| | | | Value $                280,000.00 | | | | 444.19 | 444.19 |
| Account No. **x1137**<br><br>**WELLS FARGO BANK, N.A.**<br>**1 HOME CAMPUS MAC X2501-01D**<br>**Des Moines, IA 50328-0001** | X | - | 2012<br>**MORTGAGE**<br>**DEBTORS RESIDENCE**<br>**37303 CAMELLIA LANE**<br>**CLINTON TOWNSHIP, MI 48036**<br>**(JOINT WITH EX-FIANCE, MICHELLE**<br>**WOOLHISER)**<br>**(JOINT ON DEED, NOT ON MORTGAGE)** | | | | | |
| | | | Value $                280,000.00 | | | | 289,957.00 | 9,957.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

| | | |
|---|---|---|
| __0__   continuation sheets attached | Subtotal<br>(Total of this page) | 290,401.19 | 10,401.19 |
| | Total<br>(Report on Summary of Schedules) | 290,401.19 | 10,401.19 |

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                                                 Best Case Bankruptcy

**Fill in this information to identify your case:**

Debtor 1    _Theodore Bruce Rider, II_

Debtor 2
(Spouse, if filing)    _____

United States Bankruptcy Court for the:    EASTERN DISTRICT OF MICHIGAN

Case number    **14-50871**
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing post-petition chapter 13
   expenses as of the following date:

   _____
   MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2
   maintains a separate household

## Official Form B 6J
## Schedule J: Your Expenses                                                     12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct
information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number
(if known). Answer every question.

**Part 1:    Describe Your Household**

1.    **Is this a joint case?**

      ■ No. Go to line 2.
      ☐ Yes. **Does Debtor 2 live in a separate household?**

            ☐ No
            ☐ Yes. Debtor 2 must file a separate Schedule J.

2.    **Do you have dependents?**    ☐ No

      Do not list Debtor 1 and        ■ Yes. Fill out this information for
      Debtor 2.                         each dependent............

      Do not state the dependents'
      names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | Son | 4 | ☐ No  ■ Yes |
| | Son | 4 | ☐ No  ■ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |

3.    **Do your expenses include**        ■ No
      **expenses of people other than**   ☐ Yes
      **yourself and your dependents?**

**Part 2:    Estimate Your Ongoing Monthly Expenses**

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report
expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the
applicable date.

Include expenses paid for with non-cash government assistance if you know the value of
such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

| | | **Your expenses** |
|---|---|---|

4.    The rental or home ownership expenses for your residence. Include first mortgage payments
      and any rent for the ground or lot.                                            4. $ _____0.00

      If not included in line 4:

      4a.    Real estate taxes                                                       4a. $ _____0.00
      4b.    Property, homeowner's, or renter's insurance                            4b. $ _____0.00
      4c.    Home maintenance, repair, and upkeep expenses                           4c. $ _____0.00
      4d.    Homeowner's association or condominium dues                             4d. $ _____0.00
5.    Additional mortgage payments for your residence, such as home equity loans      5. $ _____0.00

Debtor 1   __Theodore Bruce Rider, II__                              Case number (if known)   __14-50871__

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.  Electricity, heat, natural gas | 6a. | $ | **154.66** |
| | 6b.  Water, sewer, garbage collection | 6b. | $ | **40.00** |
| | 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | **0.00** |
| | 6d.  Other. Specify: _____ | 6d. | $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7. | $ | **150.00** |
| 8. | **Childcare and children's education costs** | 8. | $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | **15.00** |
| 10. | **Personal care products and services** | 10. | $ | **10.00** |
| 11. | **Medical and dental expenses** | 11. | $ | **0.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare.<br>Do not include car payments. | 12. | $ | **160.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | **0.00** |
| 14. | **Charitable contributions and religious donations** | 14. | $ | **0.00** |
| 15. | **Insurance.**<br>Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.  Life insurance | 15a. | $ | **0.00** |
| | 15b.  Health insurance | 15b. | $ | **0.00** |
| | 15c.  Vehicle insurance | 15c. | $ | **130.00** |
| | 15d.  Other insurance. Specify: _____ | 15d. | $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.<br>Specify: _____ | 16. | $ | **0.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a.  Car payments for Vehicle 1 | 17a. | $ | **0.00** |
| | 17b.  Car payments for Vehicle 2 | 17b. | $ | **0.00** |
| | 17c.  Other. Specify: _____ | 17c. | $ | **0.00** |
| | 17d.  Other. Specify: _____ | 17d. | $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* (Official Form 6I). | 18. | $ | **300.00** |
| 19. | **Other payments you make to support others who do not live with you.**<br>Specify: _____ | 19. | $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a.  Mortgages on other property | 20a. | $ | **0.00** |
| | 20b.  Real estate taxes | 20b. | $ | **0.00** |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. | $ | **0.00** |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. | $ | **0.00** |
| | 20e.  Homeowner's association or condominium dues | 20e. | $ | **0.00** |
| 21. | **Other:** Specify:   **PET FOOD/VET** | 21. | +$ | **20.00** |
| 22. | **Your monthly expenses.** Add lines 4 through 21.<br>The result is your monthly expenses. | 22. | $ | **979.66** |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a.  Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | **5,295.00** |
| | 23b.  Copy your monthly expenses from line 22 above. | 23b. | -$ | **979.66** |
| | 23c.  Subtract your monthly expenses from your monthly income.<br>The result is your *monthly net income.* | 23c. | $ | **4,315.34** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes. Explain: _____